# FRENCH et al. *v.* THE NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

By the laws of Spain servitudes were divided into the two classes, of *urban*, or those which one house enjoys on another, and *rustic*, or those which one estate enjoys on another. Partida 3, tit. 31, law 1. The servitude of view is exclusively *urban*, such as a house only can acquire on another. Such a servitude could never be acquired by unimproved lands on other lands. Partida 3, tit. 31, law 2.

By the Spanish laws a servitude could be acquired in one of three ways only: first, by an express grant for a valuable consideration; second, by last will; or thirdly, by use and lapse of time.

Where a proprietor of lands dedicates to public use two streets, reserving a strip of land between them, the use made by him of the land so reserved at the time of the dedication, will not deprive him, or his assigns, of the right of appying it afterwards to other uses.

APPEAL from the District Court of the First District, *Buchanan*, J. In the year 1788, *Bertrand Gravier* established on his plantation the *faubourg* St. Mary, now a part of the city of New Orleans. The faubourg extended back to St. Charles street. Poydras street was marked on it as having a width of seventy feet. After the death of *Bertrand Gravier*, his brother, *Jean*, in the year 1797, became the proprietor of his estate, and he subsequent-

ly extended the faubourg beyond St. Charles street, first to Circus, then to St. Paul, and finally eight squares further. At the point where an extension of Baronne (then called Salcedo street) would have intersected Poydras street, a space of ground, one hundred and eighty feet square, was reserved by *Jean Gravier*, and on it, as marked on the plan of the first extension made by him, is written the word *Basin*. The upper line of Poydras street was prolonged as far as the faubourg extended, but the width of the street was reduced from seventy to forty feet. There was, at this line, a plantation ditch, running parallel to a continuation of the side lines of Poydras street, and included within them, which was used by *Jean Gravier* to drain his plantation and to transport timber from the swamp. Adjoining the lower line of the prolongation of Poydras street, *J. Gravier* reserved a slip of land thirty feet in breadth, through which the ditch ran. Adjoining the lower line of this slip, he dedicated to public use another street, parallel to the continuation of Poydras street, forty feet in width, to which he gave the name of Canal street. The ground adjoining the lower line of Poydras street as far as the square of one hundred and eighty feet, and that adjoining the lower line of Canal street beyond that square, was divided into lots, and sold by *J. Gravier*, or by the sheriff under execution, as fronting upon those streets respectively. The city of New Orleans accepted the dedication of Canal street and of the continuation of Poydras street, *Gravier* reserving the basin and slip of land of thirty feet as his private property.

This action was commenced, in 1838, by an injunction. The plaintiffs prayed that the defendants might be restrained from erecting certain buildings on the space reserved for the canal and basin, and that they might be compelled to remove certain sheds, fences and other obstructions, already placed thereon; that they might be compelled to excavate said canal and basin, and to make it navigable to the bayou St. John, or that they be compelled to abate the nuisance occasioned by its unfinished condition, by filling it up. They also prayed for ten thousand dollars damages, and for general relief.

The defendants answered by a general denial; averred that they were the absolute and unconditional owners of the ground mentioned in the petition, and described as intended for the canal and basin, and that it never was public property; and that they are not bound to make any canal or basin thereon, but have a right to build thereon, or to sell the ground for building lots. They pray that the action may be dismissed. No further proceedings were had till 1844, when *John McDonogh* purchased some of the squares fronting upon Canal and Poydras streets, and intervened in the suit, praying for such a judgment as was asked for by the plaintiffs, and that it may be decreed that the defendants have no other right of property or ownership in the land in dispute than that of making a canal and basin thereon. There was a judgment for the defendants, from which the plaintiffs and intervenor appealed.

*Roselius*, for the appellants. The only question presented for decision is, whether the defendants have a right to erect buildings on the space or strip of ground which, according to the original plans, made by the founder of the suburb, is covered by the canal and basin, without the consent of the front proprietors? The counsel for the defendants contend that this question was virtually decided in their favor, in the case of the *Carrollton Railroad Company* v. *Municipality No. Two*, 19 La. p. 62. This is a mistake. In that case it was decided that the *locus in quo* had not been dedicated to public uses. This decision rests principally on the ground that there was no acceptance shown on behalf of the public. The court observes: "If any dedication was ever intended, it remained inchoate until some evidence of acceptance was exhibited. None has been shown." But the question which arises in this case was ex-

FRENCH
*v.*
NEW ORLEANS
AND
CARROLLTON
RAILROAD Co.

pressly reserved. The court say: "The plaintiffs complain of the judgment of the Parish Court, because the judge declined deciding to what uses they should apply the canal and basin, and ask us to amend the judgment in that particular. This request we must decline, as we do not think proper to give such an opinion in the present state of the case." p. 71.

The next case on which the defendants rely, is that of *Livaudais* v. *Municipality No. Two*, 16 La. 509. It was contended by the defendants in that case that the plaintiff, who was the founder of the faubourg Annunciation, had dedicated a square of ground to the public, by writing the word "Colysée" over it, on the original plan. The court decided that this was not sufficient to support the alleged dedication. But the reasoning of the judge who delivered the opinion fully sustains the position taken by the plaintiffs and appellants. Judge Martin says, at p. 513:

"There is no evidence of the dedication *out* of the plan in this case, and none *in* the plan *out* of the word 'Coliseum.' In this same plan, is marked a *locus publicus*, called 'la place Annunciation,' in the middle of which is a spot designated as a place for a church. If the plaintiff did not by this designation contract the obligation of building a church, *he certainly renounced the right of appropriating it to any other object.* The erection of a church by him could not be resisted by any body." In the concluding part of the same opinion, the judge remarks: "It is not for us now to say whether the purchaser of lots from the plaintiff, in reference to this plan, acquired rights or not on this square? If they did, whether those rights were personal or real, in the nature of a servitude, and whether the lots were the *creditor estates*, and the square the *debtor estate* of the servitude? The rights of the purchasers of lots, whatever they may be, cannot be acted on in a suit to which they are not parties, by themselves or their legal representatives. The Municipality is without authority to represent them."

Much importance seems to be attached to the fact that, one of the forks of Poydras street is called Canal street. It is submitted, however, that this circumstance cannot be considered as very material in the present enquiry. We do not insist that the defendants should be compelled to keep the canal open for navigation; but we contend that they have no right to raise buildings on the site of the canal and basin. They have succeeded to all the rights of *Jean Gravier;* and therefore can excercise no other or greater rights than he might himself have done. Then the question recurs, can a person who has sold property, not only in conformity to a plan, but with reference to an existing state of things, afterwards arbitrarily make a material change, to the injury of those who have acquired their titles from him? The court perceives that this question, properly speaking, is neither one of dedication nor of servitude. It may perhaps be considered as partaking of both the one and the other. The question is of great importance, not only as regards the parties to this suit, but it will virtually decide another question of much more interest to the inhabitants of New Orleans, i. e. whether the navigation company can erect buildings in the centre of Canal street? The analogy between the two cases is so complete that it is impossible to discover the slightest difference between them.

The following authorities, I believe, support the claims of the plaintiffs to the fullest extent. 1 Wendell, 262, In the Matter of the application of the Mayor &c. of the city of New York, relative to the opening of Seventeenth street in the twelfth, late ninth, ward of the city *Wyman* v. *the Mayor &c. of New York*, 11 Wend, 487. *Barclay et al.* v. *Howell's Lessee*, 6 Peters, 498. *City of Cincinnati* v. *Lessee of White*, Ibid, 431. *McDonogh* v. *Calloway*, 8 Rob. 92. *Rex* v. *Lloyd*, 1 Camp. 262. 2 Blackstone, 36. 3 Mason, 250. 5 Saunton, 311. 1 Saunders, 323.

*Carter*, on the same side.

*L. Janin*, for the defendants. The canal and basin were decided by the Supreme Court to be the property of the plaintiffs. in the case of the *Carrollton Railroad Company* v. *Municipality Number Two*. See 19 La. 63. The plaintiffs in that case are the defendants in this action. The question is thus again presented, whether the defendants can use this ground for building lots, or should be restricted to using it as a canal? The court in the case in 19th La. say, (p. 70): "All the evidence, both of plaintiffs and defendants, shows that *Jean Gravier* always considered the basin and canal as his own. He used them; he contracted with *Goodwin* and others to enlarge and deepen the canal;

he always asserted and maintained his possession until 1825, when the property <span style="float:right">FRENCH</span>
was seized and sold under execution to *Gordon*, who purchased for the Orleans <span style="float:right">*v.*</span>
Navigation Company. They remained in undisturbed possession until 1833, NEW ORLEANS
when a sale was made to the plaintiffs. Immediately after the sale, the old CARROLLTON
corporation of the city recognized the rights of the Railroad Company, by re- RAILROAD Co.
ceiving from them a grant of two pieces of ground, for the purpose of prolong-
ing Baronne and Poydras streets, in consideration of which, they gave the com-
pany the use, during the existence of their charter, of a portion of the Place
Gravier, to be used as turnouts for their roads, a shelter or depôt for their cars,
and other purposes specified in the deed. In July, 1836, the defendants recog-
nized the interest and right of the plaintiffs, by a resolution calling on them to
fill up the canal: and in the month of September, in the same year, actually
purchased from them all the space between Baronne and Circus streets, and
and have built a market house on it, which was one of the conditions of the
sale."

Again, at p. 71: "What constitutes a dedication to public use, has been so
much discussed in this court lately, as not to need repetition now. There must
be a plain and positive intention to give, and one equally plain to accept. The
form is not material. We see nothing in the evidence to prove a dedication of
the basin and canal; on the contrary, such a purpose was always repudiated by
*Jean Gravier*. Upon that point we see but little difference between this case
and that of *Livaudais v. The Second Municipality*, 16 La. 509. If any dedi-
cation was ever intended, it remained inchoate, until some evidence of accept-
ance was exhibited. None has been shown. The defendants or the public
never used the basin or canal in any manner, and it was in fact not susceptible
of use, except by *Gravier*, and his agents or lessees, who used it to transport
wood from the swamp, and to supply clay for making bricks. As the defend-
ants have failed to prove a dedication, they have no legal title to the premises
in question."

It is contended by the intervenor that, as *Gravier* sold a number of lots as
"fronting on Canal street or on the canal," this implied an undertaking on his
part to make a canal on the reserved space, or at least to leave it open. It is
true that *Gravier* sold, in 1805, to *Ross*, a square "facing the canal;" that, in a
mortgage to the Orleans Insurance Company, he speaks of "*divers terrains
situés sur le bord du canal.*" But the plan annexed to this last mentioned act,
and afterwards to an act of January 15, 1818, shows that these lots fronted on
Canal street, a street of forty feet in width, which separated them from the
canal; and all the other lots on the same street were sold as fronting on "Canal
street." This is a much weaker case than that of the front proprietors in fau-
bourg St. Mary, who purchased "*frente al rio*," or "*frente à la levée*," and yet
did not take the batture. 8 Mart. N. S. 576. 9 Mart. 656. How could it be
pretended that the naming of a street after a neighboring object, a garden for
instance, or the sale of a lot as "facing the garden," could impose upon the
seller the obligation of keeping this ground forever as a garden?

The dedication of ground to public use when town lots are laid out, is a
species of urban servitude. To be binding upon the grantor, it requires a distinct
acceptance. The Supreme Court held, in 19 La. 71, that the facts of that, and
consequently of the present case, afforded no proof of an intention to dedicate,
or of the acceptance of the pretended dedication. Much light is thrown upon
this subject by the decision of the Supreme Court in the case of *Livaudais v.
Municipality Number Two*, 16 La. 509. *Livaudais* laid out and sold faubourg
Annunciation, in 1807, according to a plan, on one of the squares of which was
written "colisée." The Municipality having subsequently enclosed this square,
and claimed it as public property, *Livaudais* instituted a petitory action.

The following extracts from the opinion of the court in that suit bear upon
the present case:

"Had the plaintiff designated on his plan places for a theatre, a ball room, a
concert room, or a a tennis court, would this designation be considered as a dedi-
cation of those places to public use, divest him of his title, and place them out
of commerce? If it did, what remedy would there be if these places were
not applied according to the dedication? Who should be put *in mora?* And
against whom should the process be directed for the purpose of setting the
dedication aside?"

FRENCH
*v.*
NEW ORLEANS
AND
CARROLLTON
RAILROAD Co.

"As to the erection of this edifice, who has put him *in mora?* If the building is not necessarily to be erected by him, who has offered to erect it? Who has accepted the donation which results from the dedication?"

"They (the Municipality) contend, that this property is their own, and all their efforts in this case have tended to show that the plaintiff has been divested of his title. The action being a petitory one, this would suffice to prevent a recovery, but, as we have said, there was no dedication. Had there been one, it was incohate only, until the acceptance of the party for whose benefit the dedication was intended. Of the acceptance there is not the least tittle of evidence."

From this decision it may be collected: 1st. That a dedication to public use, inferred from a plan of division into town lots, must be confined to those parts which are necessary for the use of the public, and which from their nature can not remain private property, such as streets and squares.

2nd. That if such a plan should contain indications that the proprietor intended to apply certain portions of ground to the construction of buildings, or other improvements, which, while they are not indispensable to the use of the lots sold, may yet tend to the comfort and advantage of the public, and be a source of emolument to the proprietor, a hotel for instance, such indications will not imply a dedication of those portions of the ground to the public. Or if they could imply a qualified dedication, they would require, to be binding upon the proprietor, a separate and distinct acceptance by the public, and an express engagement on its part to make the contemplated improvement.

The solid distinction recognized by the court rests on the difference between improvements, such as streets, squares, &c., without which the substantial intention of the parties, viz, the establishment of a suburb, could not be carried into effect, and those improvements, such as churches, places of public amusement, hotels, which are not essential to the execution of the main purpose. The former fall exclusively under the administration of the public authorities, and have to be made at the public expense; the latter class of improvements are private undertakings or speculations.

It is a proposition too clear for argument, that the founder of a suburb does not contract the obligation to build a church, a theatre, or an hotel, by merely writing those words on different portions of his plan; nor will it be pretended that, by simply approving his plan of division, the public authorities assume the obligation of constructing those improvements, if he should neglect to do so. Assuredly if the public could claim such property, it would be only for the purpose of making the proposed improvement, and this is entirely beyond the power and authority possessed by city administrations in the United States.

The judgment of the court was pronounced by

. ROST, J. *Bertrand Gravier* established the present *faubourg* St. Mary, in 1788, as far back as St. Charles street. Poydras street was marked upon the plan of it as being seventy feet wide. *Bertrand Gravier* died in 1796, and the following year his entire estate was adjudicated to his brother *Jean Gravier,* who, at various times during his ownership, extended the faubourg beyond St. Charles street. There was at that time on the land, in a direction parallel to the continuation of the side lines of Poydras street, and included within them, a plantation ditch, used by *Gravier* for the purposes of draining, and also to boat timber out of the swamp, for the use of his plantation and of a pottery he worked at the time. In the plan of the first extension of the faubourg made by him in 1802, the word *Basin* was written on a square lot situated at the upper end of the drain; the upper line of Poydras street was prolonged as far as the faubourg extended, but below the square marked *Basin,* the width of that street was reduced from seventy to forty feet. Adjoining the lower line, *Gravier* reserved a breadth of thirty feet of land through which the drain passed, and adjoining that land below, he dedicated to public use, another street forty feet wide, to which he gave the name of Canal street.

All the adjoining lower lots of this and the subsequent extensions of the faubourg were sold, either by him or by the sheriff under execution, as fronting upon Poydras street above, and upon Canal street below, according to the plan of division of the faubourg. The city corporation accepted the dedication of Canal street, and of the centinuation of Poydras street, for the public use; but did not, and could not accept the dedication of the space between them, *Gravier* having at all times expressly reserved the right of property to it. That strip of land and the basin were subsequently sold under execution as the property of *Gravier*, and the defendants hold them under a sale that binds them not to make a canal.

<div style="text-align:right">

FRENCH
*v.*
NEW ORLEANS
AND
CARROLLTON
RAILROAD CO.

</div>

The question of dedication in relation to that property, came before the Supreme Court in the case of the *Carrollton Railroad Company* v. *Municipality No. Two*, and it was held that no dedication had ever taken place, and that the title was in the assignees of *Gravier* ; but after expressing this opinion, the court further said :

" The plaintiffs complain of the judgment of the Parish Court, because the judge declines deciding to what uses they should apply the Canal and basin, and ask us to amend the judgment in that particular. This request we must decline, as we do not think it proper to give such an opinion in the present state of the case. The plaintiffs have a regular title from *Jean Gravier*, and are vested with all his rights ; as to the manner in which they may choose to exercise them, we will not express an opinion in advance."

This suit was instituted in 1838, by various purchasers of property fronting upon the aforesaid streets, for the purpose of obtaining the decision of the court on this single point. The plaintiffs allege that the site of the canal and basin can only be applied to the purposes for which they were intended by *Gravier* ; that the defendants have no right to enclose the same, nor to erect sheds or buildings thereon, so as to interfere with the right of view of the petitioners ; they pray that the defendants be compelled either to dig out said canal and basin, so that the same may be navigable to the bayou St. John, or to abate the nuisance occasioned by its unfinished condition, and to fill it up in conformity with the police regulations of the city, and that they be enjoined from erecting buildings thereon. The defendants answered, alleging their perfect ownership of the property, and their right to use it as they may think proper, without hinderance from the plaintiffs. No further steps were taken in these proceedings till 1844, when *John McDonogh*, a purchaser at sheriff's sale of some of the squares fronting upon Canal and Poydras streets, and situated beyond eight squares from the inhabited part of the faubourg, intervened. The original plaintiffs appeared to have abandoned the suit, and the contestation is now exclusively between the intervenor and the defendants. The court of the first instance gave judgment in favor of the defendants, and the intervenor appealed.*

His counsel has argued that the question presented by the issue, is neither one of dedication nor of servitude, but he has failed to show how it can be any thing else ; he admits that there was no divestiture of the title, and therefore no dedication. If it be true that, although the title has remained in the defendants, they can neither enclose their land nor erect buildings upon it, theirs is, in legal parlance, an imperfect ownership. The only imperfect own

---

* The plaintiffs also appealed.

FRENCH
v.
NEW ORLEANS
AND
CARROLLTON
RAILROAD CO.

nerships of immoveables recognized by our laws are those which result from the immovable being charged with an usufruct, a right of use or a servitude. Civil Code, arts. 482, 484.

It is not pretended that the immovable is charged in this case either with an usufruct or a right of use; and if the intervenor has any right at all to control the use of it, that right must be founded upon a *servitus realis*. His counsel, well aware of the necessities of his case, has alleged that he had acquired the right of view, by the disposition which *Jean Gravier* had made of the land in controversy in the plan of the faubourg, and that the erection of buildings upon that land or of enclosures placed around it, would abridge that right and render it imperfect. We must therefore inquire whether a right of view is a servitude which unimproved lands can, in any case, acquire upon other lands, and, if so, how it was acquired to the lands of the intervenor?

The laws on servitudes in force at the time those faubourgs were created, are found in the Partidas. The law 1st, tit. 31st, of the 3d Partida divides them into two classes. The first constitutes those which *a house* enjoys on *another house;* these are named *urbana.* The second, are those which an estate enjoys on another estate; they are called *rustica.* The second law of the same title describes the right of view as being *exclusively urban,* and such as a house can acquire over another house.

The intervenor is the owner of swamp lots; it is not pretended that there were any houses on them when he purchased them, nor that there are any now. If then the right of view presupposes the existence of a house at the time it is alleged to have been acquired, how can the intervenor avail himself of it under the state of facts disclosed by him. He was clearly entitled to a right of way from the lots to the inhabited parts of the city, and he obtained it by the dedication of Canal and Poydras streets; but a right of view was not in the contemplation of the parties at the time, and is not a servitude that attaches in favor of waste lands. If it did, it is not perceived how the intervenor ever acquired it.

" Servitudes not established by law could, at that time, be acquired in three ways only : 1st. By the grant of the owner to the persons who were to enjoy them, and for a valuable consideration. 2d. By his last will establishing the servitudes. 3d. By use and lapse of time. Law 9th, tit. 31st, Partida 3.

The intervenor claims under an implied grant from *Jean Gravier ;* but the laws then in force did not recognize such an implication, and required the grant to be expressly made to the party who was to enjoy it, and a consideration of some kind to be given by that party. " *Non enim per solam promissionem acquiritur servitus, nisi realiter constituatur.* Gregorio Lopez, on the law cited. Here there was no contract, no acceptance, no consideration. *Jean Gravier* never offered to dedicate the land in controversy to public use; but, on the contrary, retained it as his own, and subsequently tried to form a company to whom he might sell it for $100,000, on condition that part of the price should go to the construction of the canal. In this attempt he failed, and the land remained as if the old drain had never been upon it.

If a right of view could be implied from such facts, the law in force at that time limited that right to the neighboring estate. The words *neighboring estate* had a technical meaning under the Roman law and the laws of Spain, which, on this subject, are the same. They meant the estate contiguous to that in fa-

<div style="float:right">

FRENCH
*v.*
NEW ORLEANS
AND
CARROLLTON
RAILROAD Co.

</div>

vor of which the right was claimed. See Pardessus, Disser. p. 353, and authorities there cited. Domat, Legum, p. 31, tit. 2.

Now, in this case, Canal street and the continuation of Poydras street had been dedicated to public use, and were placed out of commerce by the acceptance of the dedication. They were the neighboring estates of the squares and lots fronting upon them, and if the right of view could attach at all, before houses were built, in favor of the purchasers of those lots and squares, that right would not extend beyond the breadth of those streets. The designation on the plan of the actual use of the strip of land situated between them, did not affect the right of property of *Gravier*, and left him at liberty to use it in any other lawful manner he saw fit.

To illustrate this position, let it be supposed that *Gravier* had extended the faubourg only on the lower side of Canal street, and that above the upper line of said street the words—*plantation of Jean Gravier*—had been inserted on the plan made of it. According to the argument of counsel, the intervenor would have acquired by that fact a right of view over the whole plantation, and *Gravier* and his representatives would have been forever debarred of the rights of extending the faubourg there, and of dividing the plantation into building lots. An argument that would lead to such consequences cannot be well founded in law, and the cases quoted in support of it are all based upon an entirely different state of facts. The analogy attempted to be established between the rights of the defendants, and those of the Navigation Company to the middle of old Canal street, entirely fails. That street was laid out as a single street, and the proprietors on both sides of it purchased their lots with reference to that previous destination. The authority given to the Navigation Company to extend their canal through the middle of it, was a change of destination of public property, not a divestiture of private ownership.

Here *Gravier* gave to the public, who accepted them, two distinct and separate streets, and reserved, as his own, a strip of land thirty feet wide between them. The dedication was accepted with that reservation; the city of New Orleans never attempted to interfere with his ownership; and the intervenor purchased the squares he owns, with full knowledge of those facts. The fact of his purchase did not impair the right of ownership of *Jean Gravier* to what he did not sell, nor was the subsequent use which he, or his assigns, were to make of it, fixed by the use to which it was applied at the time of the formation of the faubourg. They may now divide it into town lots, provided they dedicate to public use those portions of it included within the lines of the cross streets.

There is no error in the judgment appealed from.

*Judgment affirmed.*